IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | Case No. 1:17-cr-74-4 |
| Plaintiff, : | |
| : | Judge Susan J. Dlott |
| v. : | |
| : | **ORDER GRANTING DEFENDANT'S** |
| DARRELL ALLSBROOK, : | **MOTION FOR COMPASSIONATE** |
| : | **RELEASE** |
| Defendant. : | |
| : | |

This matter is before the Court on Defendant's Resubmitted Motion for Compassionate Release (Doc. 304). The United States does not oppose Defendant's motion. For the reasons set forth below, Defendant's motion will be **GRANTED**.

### I. BACKGROUND

This matter stems from a state and federal investigation into an alleged criminal street gang called "Blood Brothaz." (Presentence Report ("PSR") at ¶ 32.) Allsbrook and his co-defendants, members of Blood Brothaz, created a rap music label called "FDD" to act as a cover for drug sales and to legitimize drug proceeds. (PSR at ¶ 34.)

On December 3, 2018, Defendant Darrell Allsbrook admitted participation in a years-long conspiracy to unlawfully distribute marijuana. (Doc. 170-1 at PageID 664.) Specifically, Allsbrook—who resided in California—sent packages containing marijuana via the United States Postal Service and other carriers to Cincinnati addresses for distribution by his co-defendants. (*Id.*) He pled guilty to one count of conspiracy to distribute marijuana in violation of 21 U.S.C. §§ 841 and 846, and the Court sentenced him to 21 months imprisonment followed by four years of supervised release. (Docs. 170, 885.)

Allsbrook is currently housed at FCI Morgantown, a minimum security federal correctional facility in West Virginia. His projected release date is June 9, 2021.

Allsbrook now moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (Doc. 304.) He suffers from asthma and sleep apnea which put him at high risk of serious illness if exposed to COVID-19 while incarcerated. (PSR at ¶ 117.) In addition, his mother—who suffers from early onset dementia and will be undergoing surgery later this month—requires his assistance and care.

## II.     LEGAL STANDARD

The Court lacks authority to resentence a defendant, except as permitted by statute. *United States v. Houston*, 529 F.3d 743, 748–49 (6th Cir. 2008). "The compassionate release provisions were first included in the Sentencing Reform Act of 1984 . . . to be a 'safety valve' to reduce a sentence in the 'unusual case in which the defendant's circumstances are so changed, such as by terminal illness, that it would be inequitable to continue the confinement of the prisoner.'" *United States v. Ebbers*, 432 F. Supp. 3d 421, 430 (S.D.N.Y. 2020) (quoting S. Rep. 98-225, at 121 (1983)). The 1984 provisions empowered only the Director of the Bureau of Prisons ("BOP") to file a motion for compassionate release, "[y]et the Director seldom wielded this significant power." *United States v. Jones*, ___ F.3d ___, 2020 WL 6817488, *3 (6th Cir. Nov. 20, 2020). For instance, the BOP approved only 6% of 5,400 compassionate release applications received between 2013 and 2017. *Id.* (referring to Christie Thompson, *Frail, Old and Dying, but Their Only Way Out of Prison Is a Coffin*, N.Y. TIMES (Mar. 7, 2018), https://www.nytimes.com/2018/03/07/us/prisons-compassionate-release-.html (citing data provided by the BOP)).

Frustrated that the Director acted so infrequently, Congress passed the First Step Act of 2018. "Section 603(b) of the First Step Act—titled 'Increasing the Use and Transparency of Compassionate Release'—ousted the BOP from its preclusive gatekeeper position and amended 18 U.S.C. § 3582(c)(1)(A)." *Id.* at ___, 2020 WL 6817488, at *4; *See* First Step Act of 2018, Pub. L. 115-391, Title VI, § 603(b), 132 Stat. 5194, 5239. Pursuant to § 3582(c)(1)(A)(i):

> The court may not modify a term of imprisonment once it has been imposed except that--
> **(1)** in any case--
> **(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
> **(i)** extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Thus, under the current provisions, an incarcerated person can file for compassionate release after either exhausting the BOP's administrative process or thirty days after the warden received the compassionate release request, whichever is earlier. *Id.* Once this administrative process has occurred, the Court employs a three step evaluation to determine: (1) whether "extraordinary and compelling reasons warrant" the requested sentence reduction; (2) whether the reduction is consistent with applicable Sentencing Commission policy statements; and (3) whether, considering the applicable section 3553(a) factors,[1] the reduction is warranted under the

---

[1] Section 3553(a) factors include: (1) the nature and circumstances of the offense; (2) the defendant's history and characteristics; (3) the need for the sentence imposed to reflect the seriousness of the offense, provide just punishment, and promote respect for the law; (3) the need to protect the public from further crimes of the defendant; (4) the need to provide the defendant with needed educational or vocational training, medical care or other

3

particular circumstances of the case. *Jones*, ___ F.3d at ___, 2020 WL 6817488, at *6 (footnote added); 18 U.S.C. § 3582(c)(1)(A). "In cases where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement [USSG] § 1B1.13." *Jones*, ___ F.3d at ___, 2020 WL 6817488, at *9 (concluding that § 1B1.13 applies only where the BOP Director files the compassionate release motion). A court's decision to grant compassionate release is discretionary. *Id*. at *5. A person seeking sentence reduction bears the burden of proving entitlement to compassionate release. *Ebbers*, 432 F. Supp. 3d. at 426; *United States v. Hill*, No. 5:14CR337, 2020 WL 5104477, at *1 (N.D. Ohio Aug. 31, 2020).

### III.  ANALYSIS

In the case at bar, Allsbrook exhausted the required administrative remedies by petitioning the warden for compassionate release at least thirty days prior to filing his motion. (Doc. 304 at PageID 1381.) Therefore, his motion is ripe for consideration on the merits. *See United States v. Alam*, ___ F.3d ___, 2020 WL 2845694 (6th Cir. June 2, 2020).

#### A. Extraordinary and Compelling Reason

The Court first must determine whether an extraordinary and compelling reason warrants sentence reduction here. The COVID-19 pandemic continues to rage both inside and outside of correctional facilities. "During the COVID-19 pandemic, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Provost,* No. 3:18-cr-42, ___F. Supp. 3d___, 2020 WL 4274570, at *4

---

treatment; (5) the kinds of sentences available; (6) the sentencing guideline range; (7) the need to avoid unwarranted sentence disparities among defendants with similar records guilty of similar conduct; and (8) the need to provide restitution to victims of the offense. 18 U.S.C. § 3553(a).

4

(E.D. Va. July 24, 2020) (internal quotation marks omitted) (granting motion for compassionate release). For instance, in July, this Court granted compassionate release to an inmate with diabetes and high blood pressure where the correctional facility failed to implement adequate sanitation measures, did not require masks, and fired the only onsite physician. *United States v. Crawford*, No. 2:18-cr-00075-3, 2020 WL 3869480, at *2 (S.D. Ohio July 9, 2020). *See also United States v. Smith,* No. 4:15-cr-019, 2020 WL 3317222, at *4–5 (N.D. Ohio June 18, 2020) (finding defendant's age, history of heart disease, kidney disease, and diabetes constituted risk factors demonstrating extraordinary and compelling reasons for release but denying motion on other grounds); *United States v. Jackson*, No. 5:02-cr-30020, 2020 WL 2735724, at *3 (W.D. Va. May 26, 2020) (COVID-19 pandemic and defendant's type two diabetes, asthma, sleep apnea, and obesity constituted an extraordinary and compelling reason for sentence reduction); *United States v. Zukerman*, 451 F. Supp. 3d 329, 335 (S.D. N.Y. April 3, 2020) (defendant's age, diabetes, hypertension, and obesity satisfied the extraordinary and compelling reason requirement); *United States v. Perez*, 451 F. Supp. 3d 288, 293–94 (S.D.N.Y. April 1, 2020) (defendant's recent surgeries and pain and vision complications, along with his inability to care for himself in prison where social distancing in his small cell was impossible, constituted extraordinary and compelling reasons for release).

In the case at bar, Allsbrook suffers from a medical condition identified by the Centers for Disease Control and Prevention ("CDC") as among those that may increase an individual's risk of severe illness from COVID-19. CENTERS FOR DISEASE CONTROL AND PREVENTION, CORONAVIRUS DISEASE 2019 (COVID-19), *People With Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited November 30, 2020). In addition, the facility in which he is

currently housed is experiencing a significant COVID-19 outbreak. As of November 30, 2020, the Bureau of Prisons reported the following data from FCI Morgantown: 73 inmates and 4 staff members with positive COVID-19 tests, and five inmates and six staff members recovered from COVID-19. BUREAU OF PRISONS, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/ (last accessed November 30, 2020). In a prison facility, especially a minimum security facility like FCI Morgantown where inmates are housed together, it is difficult to maintain social distance and engage in other COVID-19 mitigation efforts. The Court, therefore, concludes that an extraordinary and compelling reason exists for Allsbrook's compassionate release.

### B. 18 U.S.C. § 3553(a) Factors

Having determined that an extraordinary and compelling reason exists, the Court must apply the relevant § 3553(a) factors to determine if sentence reduction is warranted under the particular circumstances of this case. *See Jones*, ___ F.3d at ___, 2020 WL 6817488, at *6; 18 U.S.C. § 3582(c)(1)(A). First, although the nature and circumstances of this offense are serious, Allsbrook's role was limited. Second, Allsbrook's history and characteristics counsel in favor of compassionate release. Although he has a history of low level drug offenses, he has successfully completed outpatient addiction treatment. (PSR ¶ 123.) In addition, he has a strong record of regular, legal employment, and he has not served time in a penal institution previously. (PSR ¶¶ 127–133.) While on bond pending resolution of this case, Allsbrook successfully maintained regular, full-time employment until the day he reported for incarceration. (PSR ¶ 135.) He also travelled for family events—with Court permission—during the pendency of this case and returned from each journey clean, sober, and at the time required.

As for the need for the sentence to reflect the seriousness of the offense, provide just punishment, and promote respect for the law, Allsbrook's projected release date is only six

6

months away. He would be eligible for release to a half-way house very shortly, and his behavior while on bond and while incarcerated provides reason for optimism that the community will not require protection from further crimes of this defendant. While his co-defendants received longer sentences in this case, they played leadership or potentially violent roles within the conspiracy. Finally, the Court is advised that the United States has no objection to Allsbrook's compassionate release. For these reasons, the Court concludes that the section 3553(a) factors support compassionate release in the specific circumstances of this case.

### IV. CONCLUSION

Accordingly, the Court **GRANTS** Defendant's Resubmitted Motion for Compassionate Release (Doc. 304). The Defendant's previously imposed sentence of 21 months of imprisonment is reduced to time served.

This Order is stayed for up to fourteen days, for the verification of the Defendant's proposed residence, to make appropriate travel arrangements, and to ensure the Defendant's safe release. The Defendant shall be released as soon as the residence and release plan are verified, appropriate travel arrangements are made, and it is safe for the Defendant to travel. There shall be no delay in ensuring travel arrangements are made. If more than fourteen days are needed to make appropriate travel arrangements and ensure the Defendant's safe release, the parties shall immediately notify the Court and show cause why the stay should be extended.

Defendant must report to his probation officer within 72 hours of release to begin supervised release. The previously imposed conditions of supervised release are unchanged.

**IT IS SO ORDERED.**

S/Susan J. Dlott_____
Judge Susan J. Dlott
United States District Court

7